AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Northern District of California

**FILED**

Dec 27 2023

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

|  |  |
|---|---|
| United States of America | ) |
| v. | ) |
|  | ) Case No.   3:23-mj-71959 PHK |
| MARCIO JOSSEL CRUZ | ) |
|  | ) |
|  | ) |
|  | ) |

*Defendant(s)*

# CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of    December 21, 2023    in the county of    San Francisco    in the

Northern    District of    California   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(C) | Possession with Intent to Distribute Fentanyl |

Penalties:
• Imprisonment: 20 years (21 U.S.C. § 841(b)(1)(C))
• Fine: $1 million (21 U.S.C. § 841(b)(1)(C))
• Supervised Release: Min. 3 years – Max. life (21 U.S.C. § 841(b)(1)(C))
• Special Assessment: $100 (18 U.S.C. § 3013(a)(2)(A))
• Forfeiture: 21 U.S.C. § 853(a) | Deportation | Denial of Federal Benefits

This criminal complaint is based on these facts:

Please see attached affidavit of DEA Special Agent Hakeem Oduniyi.

☑ Continued on the attached sheet.

/s/ Hakeem Oduniyi
*Complainant's signature*

Hakeem Oduniyi, DEA SA
*Printed name and title*

Approved as to form   */s/ Dan Karmel*
AUSA Dan Karmel

Sworn to before me by telephone.

Date:    12/26/2023

*Judge's signature*

City and state:    San Francisco, CA

Honorable Peter H. Kang, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN
## ARREST WARRANT AND CRIMINAL COMPLAINT

I, Hakeem Oduniyi, a Special Agent with the Drug Enforcement Administration (DEA), having been duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.      I make this affidavit in support of an application for an arrest warrant and criminal complaint charging Marcio Jossel CRUZ (hereafter "CRUZ") with possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), occurring on or about December 21, 2023, in San Francisco, California, in the Northern District of California.

### SOURCES OF INFORMATION

2.      The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3.      Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

### AFFIANT BACKGROUND

4.      I am a Special Agent with the DEA. I have been employed with the DEA and assigned to the Oakland Resident Office since March 2020. As a Special Agent of the DEA, I am an investigator and law enforcement officer of the United States within the meaning of 18

1

U.S.C. § 2510(7).  I am empowered by law to conduct investigations, to execute search warrants issued under the authority of the United States, and to make arrests for offenses of Federal law, including drug offenses.

5.      I have attended various trainings regarding narcotics investigations, including a 14-week Basic Agent Training program where trainees are trained on surveillance techniques, evidence processing, drafting drug affidavits, writing search warrants, and interview techniques. Trainees are also trained on drug identification, courtroom testimony, and Federal laws pertaining to the possession, sale, and distribution of illegal narcotics.  I hold a B.S. degree in Criminal Justice Administration.

6.      I previously served as a Task Force Officer with Immigration Customs Enforcement, Homeland Security Investigations, Border Enforcement Security Task Force, Gulf Coast HIDTA Group.  My parent agency was the Gulfport, Mississippi Police Department for approximately 6 years, where I held the rank of Detective in the Narcotics Division for approximately 3 years.  While assigned as a HSI TFO, I investigated a multi-state drug trafficking organization that trafficked drugs to include MDMA, cocaine, cocaine base, and marijuana from Houston, TX, through Gulfport, MS, to Atlanta, GA.  I also investigated over 10 illegal aliens for illegal entry into the United States as well as illegal aliens in possession of a firearm. While assigned as a Narcotics Detective, I conducted nearly 200 drug investigations that included the illegal possession, sale, and trafficking of methamphetamine, cocaine, cocaine base, MDMA, pharmaceuticals, and marijuana as well as prescription fraud investigations. I also conducted robbery investigations, burglary investigations, and investigations of aggravated assaults.

7.      My primary duties as a Special Agent with the Drug Enforcement Administration include the investigation of organized narcotics traffickers. I have participated in numerous narcotics investigations, during the course of which I have conducted or participated in: physical and wire surveillances, including previous Title III investigations, undercover transactions, the introduction of undercover agents, the execution of search warrants, debriefing of informants, and reviews of taped conversations and drug records.  I have also been the Affiant for federal search

warrants and arrest warrants.  Through my training, education, and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed and the methods of payment for such drugs. I have become familiar with conduct common among drug traffickers such as the concealment of monetary and non-monetary drug proceeds, the use of various conveyances to transport and traffic illegal narcotics, and the use of modern technology to aid in the growth and expansion of the drug trafficking organization.

8.     I have performed and continue to perform various duties, which include, but are not limited to:

a.     Working in an undercover capacity principally for the purpose of purchasing drug evidence from wholesalers of illegal drugs;

b.     Working in the capacity of a surveillance agent detecting and recording movement of persons known to be or suspected of being involved in the illegal drug trafficking business;

c.     Working as a case agent directing the investigation of various illegal drug traffickers and their organizations; and

d.     Directing investigations involving complex conspiracies in which numerous drug traffickers located in various states, and foreign countries were working in concert to illegally import, possess and distribute illegal drugs within the United States.

9.     Collectively, I possess a total of approximately 9 years' worth of knowledge, training, and experience in law enforcement, which encompasses enforcing criminal statutes and conducting investigations.

### APPLICABLE STATUTE

10.     **Possession of Controlled Substance with Intent to Distribute**.  Under 21 U.S.C. § 841(a)(1), it is unlawful for any person to knowingly or intentionally possess with intent to distribute a federally controlled substance.   Under 21 C.F.R. § 1308.12, fentanyl and methamphetamine are Schedule II controlled substances.

## STATEMENT OF PROBABLE CAUSE

**A.      December 21, 2023: CRUZ sold fentanyl to an undercover and possessed distribution quantities of fentanyl and methamphetamine.**

11.      On December 21, 2023, at approximately 7:36 p.m., an investigator, acting in an undercover capacity, (hereinafter the "UC") was in the area of the San Francisco Civic Center BART Station near 1266 Market Street in San Francisco, CA, and contacted a subject who identified himself as "Michael" (later identified as Marcio Jossel CRUZ), who was wearing a dark navy hooded sweatshirt with "NASA" printed on the front in red letters.  During this encounter, the UC and CRUZ spoke about the UC purchasing fentanyl.  CRUZ stated CRUZ could sell the UC one ounce of fentanyl in exchange for $600, but after negotiations CRUZ agreed to sell the UC one ounce of fentanyl in exchange for $400.  Below is a still frame image of CRUZ during the conversation with the UC:



12.    The UC then followed CRUZ and walked south on Larkin Street and the UC observed CRUZ whistle to another unknown male (hereinafter "UM-1") who CRUZ identified as being CRUZ's holder. Based on my knowledge, training, experience, consultation with other experienced law enforcement officers, and knowledge of similar investigations, I know drug traffickers, such as CRUZ, often use an associate to aid in the concealment their drugs. Drug traffickers, such as CRUZ, will often give larger bags filled with various narcotics to an associate in order to safeguard. Upon needing to conduct a drug transaction, drug traffickers will then signal to the associate who is concealing the "stash" of drugs in order to grab the requested narcotics to complete the drug transaction.

13.    The UC observed UM-1 give CRUZ a black bag that the UC observed to contain various pre-packaged suspected narcotics. The UC then observed CRUZ reach into the bag and retrieve a clear bag containing suspected fentanyl. CRUZ then sold the UC approximately 15.7 gross grams of suspected fentanyl in exchange for $400. Below is a still frame image of CRUZ during the sale to the UC:



14.      After the drug deal, investigators arrested CRUZ without incident.  When searched, investigators seized from CRUZ a black bag containing approximately 77 individually packaged small coin bags containing approximately 58.7 gross grams of suspected fentanyl (including packaging), 9 bags containing approximately 59.6 gross grams of suspected methamphetamine (including packaging), 11 dosage units of suspected counterfeit blue pills marked with "M30" containing suspected fentanyl, and a digital scale containing suspected drug residue.  Utilizing a TruNarc testing device, the suspected fentanyl purchased and seized from CRUZ later tested presumptive positive for fentanyl and the suspected methamphetamine seized from CRUZ later tested presumptive positive for methamphetamine.  The black bag seized from CRUZ was concealed in CRUZ's front sweater pocket.

15.      Based on my knowledge, training, experience, and consultation with other experienced officers, I know the amounts of suspected fentanyl and methamphetamine seized from CRUZ on December 21, 2023, were more than personal use and are amounts often possessed by drug dealers with the intent to distribute.  I also know based on my knowledge, training, experience, consultation with other experienced law enforcement officers, and knowledge of this investigation that drug dealers, such as CRUZ, often have digital scales, sandwich and/or smaller coin size bags, and multiple controlled substances to parcel out different types of drugs being sold on the streets.  In addition, possessing those quantities of drugs and paraphernalia associated with selling drugs while in the San Francisco's Civic Center BART Station, an area notorious for a high volume of drug sales activity, is consistent with possession of those controlled substances for distribution.

15.      I also know based on my knowledge, training, experience, consultation with other experienced law enforcement officers, and knowledge of this investigation that drug dealers, such as CRUZ, often package their narcotics in a manner that allows for easy transactions and discreet handling.  Drug dealers often conceal their drugs in locations that are easily accessible.  I know drug dealers often use digital scales to measure out small and precise amounts of narcotics.

16.     All of the foregoing—including the hand-to-hand drug transaction with the UC, CRUZ'S possession of multiple drugs, and the manner in which they were packaged—combined with the location of the arrest near the San Francisco's Civic Center BART Station, an area notorious for a high volume of drug sales activity, leads me to conclude there is probable cause to believe CRUZ possessed the drugs law enforcement found with the intent to distribute.

## CONCLUSION

17.     Based on my training and experience, and the facts and circumstances set forth above, I believe probable cause exists to believe that on December 21, 2023, in the Northern District of California, CRUZ possessed with the intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  Accordingly, I respectfully request that the Court issue a criminal complaint and a warrant for his arrest.

/s/
HAKEEM ODUNIYI
Special Agent
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 26th day of December 2023.

HONORABLE PETER H. KANG
United States Magistrate Judge

7